### In re MONROE, Com'r.

(Supreme Court, Appellate Division, Second Department. April 23, 1909.)

EMINENT DOMAIN (§ 126*)—PROPERTY TAKEN—LAND UNDER WATER.

    A city, having the right to the water of a lake, in condemning a strip of land surrounding it, with the rights of riparian owners, for the purpose of protecting the water, should pay a substantial sum for the fee of the land underlying the lake, in addition to the award for such rights in the lake as fishing, boating, ice cutting, etc.

    [Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 126.*]

Appeal from Special Term, Westchester County.

Proceedings by the City of New York, on the application of Robert Grier Monroe, as commissioner, to acquire certain land. From an order confirming the report and award of commissioners, the City appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

Frederick W. Sherman, for appellant.

Wilson Brown, Jr., for respondents.

WOODWARD, J. This proceeding for the condemnation of certain water rights for the city of New York was begun by an interlocutory judgment or order appointing commissioners on the 7th day of February, 1903. The city had previously acquired the right to take the waters of Byram Lake and Wampus Lake as they flowed through the Byram river and Wampus river from the town of North Castle southward toward the Connecticut line. The landowners along the Wampus stream retained the right to resort to the same for the purpose of watering cattle and other ordinary purposes, and, it being conceived that this constituted a menace to the purity of the water supply, this proceeding was instituted to take the borders of the stream and its source, the Wampus Pond, for a distance of about 250 feet back from the banks, thus entirely isolating the waters from contamination. Damage maps were prepared and approved; the land about Wampus Pond being divided into parcels numbered from 82 to 87, inclusive, omitting parcel 83. The pond, itself, having an area of 40 to 45 acres, was shown upon this map as 85. The owners of the upland of parcels 82, 84, 86, and 87 put in testimony to establish the values of their several holdings, this testimony being based upon the estimated value of the property with its then existing rights in Wampus Lake, such as fishing, boating, ice cutting, and summer residential purposes, and the award of the commissioners is not questioned on this appeal in so far as it relates to these parcels.

By the map and petition of the city of New York, the appellant here, parcel 85 was designated as a separate parcel, and was alleged to be owned by Ingersoll F. Knowlton, who was the owner of certain mills on the stream below, as well as of parcel 84; but it developed in the course of the proceeding that Knowlton, with the other abutting owners, were the real owners of parcel 85, and, while the award of the commissioners for $5,000 was made to unknown owners, this was by stipulation adjusted among the real owners. The contention of the appellant is that, the abutting owners having predicated their damages upon their rights in the lake, it was error on the part of the commissioners to award more than a nominal sum for the fee of the land underlying the lake. We are of the opinion that this position is untenable. The owners of the upland had, as such owners, certain property rights in the lake, regardless of the ownership of the fee. It was valuable, no doubt, for the purpose of summer residences, because of the proximity of the lake, and this value the commissioners recognized and provided for in their report, which has not been questioned.

But, after all of the elements of value had been allowed to the

owners of the upland, there was still 40 to 45 acres of land, constituting a natural reservoir, of value to the city of New York or any one else having occasion to impound water, and it cannot be said, as a matter of law, that this property had merely a nominal value; and, were it not for the fact that the abutting owners were discovered to be the owners of the fee of the lake, it is probable that no one would have suggested that all tangible value had been taken out of this natural reservoir by paying for the rights of abutting owners in the upland. If the owners of the upland received more than they were entitled to by reason of their riparian rights, if they in fact were paid a sum which embraced elements of damage belonging to the fee of parcel 85, that is no reason why this separate parcel should be denied an award, and the question cannot be fairly presented without an appeal bringing up the entire award. Parcel 85 was treated as a distinct parcel throughout the proceeding, and it is entitled to an award as a separate parcel, taking into consideration all the elements of value which belong to it, and without any diminution for what may have been improperly allowed to the upland parcels. It does not appear that any improper rule was adopted by the commissioners in arriving at the value of parcel 85, and there is no reason, therefore, for disturbing the award as made.

The order appealed from should be affirmed, with $10 costs and disbursements to each of the respondents. All concur.